UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHNNY E. WOOD,

                                    Plaintiff,

            v.

C.O. P. BYRD, *et al.*,

                                    Defendants.

No. 16-CV-8142 (KMK)

OPINION & ORDER

Appearances:

Johnny E. Wood
Elmira, NY
*Pro se Plaintiff*

Brendan Michael Horan, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Johnny E. Wood ("Plaintiff"), currently incarcerated at Elmira Correctional

Facility and proceeding pro se, brings this Action against Correction Officers Jovan Perez

("Perez"), Peter Byrd ("Byrd"), Juan E. Rodriguez ("Rodriguez"), and Michael Manson

("Manson");[1] Nurses Travis ("Travis") and M. Brown ("Brown");[2] and Lieutenant William

Vesneske ("Vesneske"; collectively "Defendants").  Plaintiff sues Defendants pursuant to 42

U.S.C. § 1985(3), alleging that Defendants conspired to deprive him of his constitutional rights

---

[1] While Plaintiff refers to this Defendant as "C.O. Mason," the correct name of this individual appears to be "Michael Manson."  (*See* Dkt. No. 55.)

[2] While the Office of the Attorney General provided contact information for Nurse Brown's last known employer and last known contact information, the United States Marshals Service has been unable to effect service.  (*See* Dkt. Nos. 70–73.)

under the Eighth Amendment.

Before the Court is Defendants' Motion To Dismiss or Transfer Venue (the "Motion"). (*See* Not. of Mot. (Dkt. No. 79).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Third Amended Complaint ("TAC") and the exhibits attached to it, (TAC (Dkt. No. 44)), and are taken as true for the purpose of resolving the instant Motion.

Plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") from approximately July 27, 2015 through July 21, 2016.  (TAC ¶ 8.)  On May 19, 2016, at approximately 1:40 p.m., Plaintiff stopped near a wall in Sing Sing's "B-Block" yard when he experienced difficulty breathing.  (*Id.* ¶ 14).  Defendant Byrd then shouted crudely at Plaintiff over the public address system to "get . . . away from the wall" and "out of" the yard.  (*Id.* ¶¶ 15–17.)  Other inmates began to mock Plaintiff, and when Plaintiff turned to see who was doing so, Byrd struck him in the back of the head.  (*Id.* ¶¶ 18–19.)  Plaintiff then experienced dizziness and shortness of breath.  (*Id.* ¶ 20.)

At this point, two additional officers, Defendants Perez and Rodriguez, joined Byrd, and repeatedly kicked and punched Plaintiff.  (*Id.* ¶ 21.)  As the assault continued, Plaintiff tried to tell the officers that he was asthmatic, was having difficulty breathing, and wanted to use his inhaler.  (*Id.* ¶ 22.)  Plaintiff further alleges that Byrd ignored his requests for medical attention. (*Id.* ¶ 23.)  As a result, Plaintiff lost consciousness.  (*Id.* ¶ 24.)

Plaintiff was then handcuffed and taken to the prison's medical services center ("Medical Services") by unknown officers.  (*Id.* ¶ 25.)  At Medical Services, Plaintiff was evaluated by a

nurse, Defendant Brown.  (*Id.* ¶ 26.)  Plaintiff explained that he was experiencing great difficulty

breathing, severe rib pain, nausea, and dizziness, and seeing "black spots."  (*Id*. ¶ 27.)  However,

Plaintiff alleges that Brown "never adequately" assessed, treated, or documented Plaintiff's

injuries—despite possessing Plaintiff's medical record, knowing that Plaintiff was asthmatic, and

being informed that Plaintiff had lost his inhaler.  (*Id*. ¶¶ 28–33.)

At some point thereafter, Plaintiff was taken to Sing Sing's Special Housing Unit

("SHU").  (*Id.* ¶ 34.)  As he was taken, Plaintiff was again denied adequate medical treatment by

Brown.  (*Id.*)  Plaintiff alleges that Brown told him that "she was having a long day, and she was

not going to make it any longer by treating him for all of the injuries he was complaining of."

(*Id.* ¶ 35.)  Similarly, while Plaintiff was confined in the SHU, he again "did not receive

adequate medical attention."  (*Id.* ¶ 37.)  Plaintiff further alleges that Byrd and Brown "conspired

. . . in conversations with each other to not adequately treat" or document Plaintiff's injuries so

as to "cover[] up" the assault and protect Byrd.  (*Id.* ¶ 32–33.)

On July 22, 2016, Plaintiff was transferred to Upstate Correctional Facility ("Upstate").

(*Id.* ¶ 8.)  On the day of his arrival, Plaintiff requested a new inhaler and medical attention from a

nurse, Defendant Travis, for injuries arising out of the May 19, 2016 incident.  (*Id*. ¶ 38.)  Travis

denied Plaintiff's requests and told Plaintiff that he should have "thought about all of this before

he [] decided to assault officers" and that he would "not be getting an asthma inhaler because

[he] need[ed] to suffer" for what he had done. (*Id.* ¶¶ 39–40.)  Plaintiff then requested to speak

with the area sergeant, but Travis instead summoned two unidentified officers, and told them "to

deal with Plaintiff," as "he was becoming very disrespectful to her."  (*Id.* ¶¶ 42–43.)

On July 23, 2016, Plaintiff notified Defendant Manson that he needed medical attention

because he was asthmatic and having trouble breathing, and because "the right side [of] his ribs

felt like they were poking into his lung area" such that "the pain he was feeling was by no means normal." (*Id.* ¶¶ 45–48.) Manson refused to call for medical assistance and suggested, using vulgarity, that Plaintiff was not telling the truth. (*Id.* ¶¶ 47–49.) Later that day, Plaintiff similarly requested that Defendant Vesneske obtain medical attention. (*Id.* ¶ 50.) Vesneske refused as well, suggesting that Plaintiff was being untruthful and explaining that personnel at Upstate would have less tolerance for Plaintiff's behavior than those at Sing Sing. (*Id.* ¶ 51.) Vaneske told Plaintiff that "we don't like your type up this way boy," and warned Plaintiff that if he kept complaining, they would beat him "wors[e] than they did in Sing Sing." (*Id.*) Vesneske then warned Plaintiff that any grievance against him or Manson "would not reach its destination." (*Id.* ¶ 52.) Plaintiff alleges that, "fearful of not only his well[-]being, but of his very life," he did not file a grievance. (*Id.* ¶ 53.) Plaintiff claims that he felt "threaten[ed] with a greater degree of an assault than what he had already experienced." (*Id.*)

Plaintiff remained at Upstate from July 22, 2016 until October 25, 2016. (*Id.* ¶ 54.) During that time, Plaintiff filed multiple sick-call slips, but never received medical care or even an asthma inhaler. (*Id.* ¶¶ 54–55.) Again, Plaintiff alleges that this lack of response was because Travis had told the rest of the medical staff to refuse medical treatment to Plaintiff. (*Id.* ¶ 56.)

On October 25, 2016, Plaintiff was transferred to Clinton Correctional Facility ("Clinton"). (*Id.* ¶ 57.) Plaintiff explained his medical history and symptoms to a nurse at Clinton, and he was sent to an outside medical center. (*Id.* ¶¶ 58–59.) The next day, Plaintiff was transferred to Albany Medical Center, where he underwent emergency surgery for a collapsed lung that, he alleges, was caused by the May 19, 2016 assault. (*Id.* ¶¶ 60–61.) Plaintiff remained at Albany Medical Center until November 3, 2016, after which he returned to Clinton, where he spent five days in the prison hospital recuperating from surgery. (*Id.* ¶ 62.)

Plaintiff claims that he still suffers from "dizziness, fatigue, nausea, seeing black spots, pain to his rib cage when breathing, migraine headaches, and complications in general when breathing." (*Id.* ¶ 63.) Plaintiff now seeks $5,500,000 in compensatory and punitive damages for violations of his rights under federal and state law. (*Id.* 69(a).) Plaintiff acknowledges that both Sing Sing and Upstate have grievance procedures in place "as outlined in Directive 4040," but he alleges that "being in immediate fear of his life or well[-]being" because of "the violent assault he was subjected to and the threats of reprisal relating to it," he "could not in good consciousness avail himself" of those procedures. (*Id.* ¶¶ 65–66.)

B.  Procedural Background

Plaintiff's request to proceed in forma pauperis ("IFP") and initial Complaint are dated October 6, 2016 and were filed on October 18, 2016. (*See* Dkt. Nos. 1, 2.) On October 27, 2016, the Court granted Plaintiff's IFP request. (Dkt. No. 5.) The Court docketed Plaintiff's First Amended Complaint on December 30, 2016, (Dkt. No. 18), and his Second Amended Complaint on April 6, 2017, (Dkt. No. 26). On January 2, 2018, the Court docketed the operative complaint, Plaintiff's TAC. (Dkt. No. 44.) On July 18, 2019, Defendants filed the instant Motion and accompanying papers. (Dkt. Nos. 79–81.) On October 29, 2019, the Court docketed Plaintiff's Response. (*See* Pl.'s Resp. in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 86).) On November 8, 2019, Defendants filed a Reply. (*See* Defs.' Reply Mem. of Law ("Defs.' Reply") (Dkt. No. 87).) On December 4, 2019, the Court docketed an additional paper submitted by Plaintiff, styled "Plaintiff's Second Response" ("Pl.'s Reply"). (Dkt. No. 88.)

II.  Discussion

Plaintiff's TAC consists of two causes of action. In the first, Plaintiff alleges that the actions of Defendants Perez, Byrd, Rodriguez, and Brown (while Plaintiff was in Sing Sing)

violated his rights under the Eighth Amendment.  (TAC ¶¶ 14–36.)  In the second, Plaintiff

alleges violations by Defendants Manson, Travis and Vesneske (while Plaintiff was in Upstate).

(*Id.* ¶¶ 37–63.)

Defendants move, pursuant to Federal Rule of Civil 12(b)(6), to dismiss the first cause of

action on the grounds that Plaintiff failed to exhaust his administrative remedies as required by

the Prison Litigation Reform Act ("PLRA").  Defendants also move, pursuant to Federal Rule of

Civil Procedure 12(b)(3), to dismiss the second cause of action on the grounds that venue is

improper.  In the alternative, Defendants move to transfer the second cause of action to the

Northern District of New York for the convenience of the parties and witnesses.  (*See generally*

Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 80).)  For the

reasons stated herein, the Motion To Dismiss is granted with respect to the first cause of action,

and the Motion To Transfer Venue is granted with respect to the second cause of action.

A.  Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all

of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing

the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks

omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s]

all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp.

2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)).  Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally

and interpreted to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Similarly, on a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, the court must view all facts in the light most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). Thus, the district court must "accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Ne. Landscape &*

*Masonry Assocs., Inc. v. State of Connecticut Dep't of Labor*, No. 14-CV-910, 2015 WL

8492755, at *2 (S.D.N.Y. Dec. 10, 2015).  Nonetheless, "the plaintiff bears the burden of

establishing that venue is proper."  *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014)

(quotation marks omitted).

    B.  Analysis

        1.  Exhaustion

            a.  Legal Standard

Defendants argue that Plaintiff's first cause of action is barred due to Plaintiff's failure to

exhaust administrative remedies.  (*See* Defs.' Mem. 7–11.)

Failure to exhaust is an affirmative defense, not a pleading requirement.  *See Jones v.

Bock*, 549 U.S. 199, 216 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir.

2013).  Accordingly, "[i]nmates are not required to specially plead or demonstrate exhaustion in

their complaints."  *Id.*  However, "[a]n affirmative defense may be raised by a pre-answer motion

to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense

appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74

(2d Cir. 1998) (citations omitted), *cert. denied*, 525 U.S. 1103 (1999).  Thus, "dismissal is

appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint."

*Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y.

Sept. 28, 2018) (citation omitted); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)

(citing *Jones v. Bock*, 549 U.S. 199, 214–15 (2007)) (explaining that failure to exhaust

administrative remedies under the PLRA is an affirmative defense, and is grounds for dismissal

under Rule 12(b)(6)); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 534 (S.D.N.Y. 2003)

(explaining that, because the PLRA's exhaustion requirement is an affirmative defense rather

than jurisdictional, motions to dismiss based on that requirement should be made pursuant to 12(b)(6) rather than 12(b)(1)).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted). The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002), and includes actions for monetary damages even if monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Williams*, 829 F.3d at 122 (citations, quotation marks, and alteration omitted). Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably." *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations, alteration, and quotation marks omitted). As the Supreme Court has explained, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted).

Despite these strict requirements, the PLRA contains a "textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but

need not exhaust unavailable ones." *Id.* (quoting 42 U.S.C. § 1997e(a)). Crucially, "available" grievance procedures are those actually "capable of use to obtain some relief for the action complained of." *Id.* at 1859 (citation and quotation marks omitted). In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* (citation omitted). An administrative remedy is unavailable: (1) where "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque that it becomes, practically speaking, incapable of use," such that "no ordinary prisoner can discern or navigate it"; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60 (citation omitted). It bears noting, however, that the "three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams*, 829 F.3d at 123 n.2, but rather "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (citation omitted).

### b. Application

Here, it is clear from the face of the TAC that, with respect to the first cause of action, Plaintiff failed to properly exhaust available administrative remedies.

First, Plaintiff not only alleges that Sing Sing "had a grievance procedure in place," but he also identifies that procedure as that "outlined in [New York State Department of Corrections and Community Supervision ("NYSDOCCS")"] Directive 4040." (TAC ¶¶ 65–66.) The Court may therefore consider the substantive requirements of the applicable grievance procedures for two reasons: first, the Court may take judicial notice of NYSDOCCS reports and regulations, such as Directive 4040. *See Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at **5, 15–

16 nn.11, 12 (S.D.N.Y. Feb. 14, 2018) (taking judicial notice of NYSDOCCS reports). Second, Plaintiff has incorporated Directive 4040 by reference, and courts may consider "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Accordingly, the Court takes notice of the applicable grievance procedures, the New York State Department of Corrections and Community Supervision Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701 *et seq.*; *see also* Decl. of Brendan M. Horan, Esq. ("Horan Decl.") Ex. A ("DOCCS Directive No. 4040—Inmate Grievance Program") (Dkt. No. 81-1). The IGP provides for a three-step grievance process. The inmate must first submit a written grievance to the Inmate Grievance Review Committee ("IGRC"). *See Gayot v. Perez*, No. 16-CV-8871, 2018 WL 6725331, at *6 (S.D.N.Y. Dec. 21, 2018) (citing 7 N.Y.C.R.R. § 701.5(a)). Crucially, such grievance must be filed "within 21 days of an alleged incident." *Williams*, 829 F.3d at 119 (citing 7 N.Y.C.R.R. § 701.5(a)). However, even if an inmate waits "beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21-day time limit if he can show mitigating circumstances." *Id.* at 125. Next, "[i]f the IGRC's determination is adverse to the inmate, at the second step the inmate may appeal to the superintendent within seven calendar days." *Gayot,* 2018 WL 6725331, at *6 (citing 7 N.Y.C.R.R. § 701.5(c)). Finally, "if the superintendent's determination is adverse to the inmate, at the third and final step the inmate may appeal to the Central Office Review Committee ('CORC') within seven calendar days." *Id.* (citing 7 N.Y.C.R.R. § 701.5(d)).

Plaintiff freely acknowledges that he never filed a grievance relating to the conduct at issue in the first cause of action (i.e., the May 19, 2016 incident at Sing Sing involving of

Defendants Perez, Byrd, Rodriguez, and Brown). (Pl.'s Mem. 2.) Instead, Plaintiff seeks to justify that failure by explaining that he "could not in good consciousness avail himself [of] the grievance procedure" because of his "immediate fear of his life or well[-]being." (TAC ¶ 66; *see also* Pl.'s Mem. 2–3.) In other words, Plaintiff seeks to evade the PLRA's exhaustion requirement by invoking the PLRA's "textual exception to mandatory exhaustion," namely, by arguing that administrative remedies were "unavailable" because "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Plaintiff cannot rely on such a justification here. As a general matter, once the defendant has established (or the complaint alleges) that the plaintiff failed to exhaust his claims, it is the plaintiff's burden to demonstrate that particular circumstances "rendered a nominally available procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted); *see also White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (same). Here, however, Plaintiff's fear was expressly based on a single July 22, 2016 incident involving Defendant Vesneske. (TAC ¶¶ 52–53; *see also* Pl.'s Mem. 2–3.) Crucially, this incident did not occur until *after* the requisite time period for the filing of Plaintiff's grievance had elapsed.[3] July 22, 2016 is well over 21 days, and even over 45 days, from May 19, 2016. *See Williams*, 829 F.3d at 125 (explaining that grievances must be filed with 21 days of the relevant incident, or with an extension, within 45 days). Thus, Plaintiff's allegations do not even suggest that the applicable grievance procedure was unavailable during the time period in which

---

[3] Because the incident of alleged intimidation and interference took place after the deadline for the filing of Plaintiff's grievance, the Court need not determine whether this single, arguably ambiguous, alleged incident is otherwise sufficient to demonstrate the "thwart[ing]" of Plaintiff's access to the grievance procedures. *Ross*, 136 S. Ct. at 1859.

it was supposed to be available.  In other words, by the time of Vesneske's alleged threat, Plaintiff had already failed to "properly exhaust" his administrative remedies.  *See Woodford,* 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines . . . .").

Accordingly, because Plaintiff's opportunity to file a grievance (or request an exception to the time limit) expired without excuse, Plaintiff failed to properly exhaust his administrative remedies and dismissal is proper.  *See Hilbert v. Fischer*, No. 12-CV-3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (dismissing the plaintiff's claims where his "time to both file a grievance and request an exception to the time limit ha[d] long expired").  All claims against Defendants Perez, Byrd, Rodriguez, and Brown are therefore dismissed.[4]

### 2. Venue

With respect to the second cause of action, Defendants argue that venue is improper because none of the relevant Defendants resides in, and all of the relevant alleged events occurred outside of, the Southern District of New York.  (Defs.' Mem. 11–16.)

### a. Legal Principles

Under the general venue provision for cases involving a federal question, venue can be laid "in either (1) the district of the defendant's residence; (2) the district where 'a substantial part of the events giving rise to the claim occurred'; or (3) if neither of those can be applied, any district where a defendant is subject to personal jurisdiction." *Cooney v. Barry Sch. of Law*, 994 F. Supp. 2d 268, 271 (E.D.N.Y. 2014) (citing 28 U.S.C. § 1391(b)).  When a plaintiff relies on the second of these three prongs (i.e., § 1391(b)(2)) to defeat a venue challenge, a district court

---

[4] Courts often dismiss with prejudice where "the time to both file a grievance and request an exception to the time limit has long expired" and plaintiff "has not offered any reason for his delay in filing a grievance." *Hilbert*, 2013 WL 4774731, at *7.  Although such is the case here, because Plaintiff may have omitted allegations demonstrating intimidation prior to the July 22, 2016 incident, the Court dismisses these claims without prejudice.

must engage in a two-step inquiry: first, "identify the nature of the claims and the alleged acts or omissions giving rise to the claims," and second, "determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed." *Fedele*, 18 F. Supp. 3d at 316 (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)).

"Substantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33 (citations and quotation marks omitted). Courts "are required to construe the venue statute strictly." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (citing *Olberding v. Ill. Cent. R.R.*, 346 U.S. 338, 340 (1953)). Thus, "[i]t would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Id.* (citations omitted). Rather, "[o]nly the events that directly give rise to a claim are relevant." *Fedele*, 18 F. Supp. 3d at 317 (quotation marks omitted) (quoting *Jenkins Brick, Co. v. Brenner*, 321 F.3d 1366, 1371 (11th Cir. 2003)). For venue to be proper under § 1391(b)(2), "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins.*, 417 F.3d at 357 (emphasis in original); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (noting that "current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial'").

Certainly, "venue can be proper in more than one district; that is, venue is not restricted to the district with the 'most substantial' connection to the events or omissions related to a claim." *See Prospect Capital Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009) (citing *Daniel*, 428 F.3d at 432). However, the "substantial events or

omissions" test limits proper venue in order "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* (quotation marks omitted) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 179, 183–84 (1979) (emphasis in original)).

Importantly, venue is generally "reviewed claim by claim," although courts will sometimes exercise "pendent venue" over related clams "to alleviate the potential problems of inefficiency and piecemeal litigation." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (citation omitted). Where venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Fedele*, 18 F. Supp. 3d at 319 (citation and quotation marks omitted); *see also Daniel*, 428 F.3d at 435 (noting that a court must decide whether to "simply affirm dismissal on these [improper venue] grounds or, in the interest of justice, order transfer of the action to another district where jurisdiction and venue properly obtain" (citation omitted)). Under 28 U.S.C. § 1406(a), a court has the discretion to cure a venue defect "in the interest of justice" by transferring the relevant claims "to any district or division in which it could have been brought."

### b. Application

Here, Plaintiff alleges that Defendants Travis, Vesneske, and Manson "were working in their official capacity . . . at U[pstate], 309 Bare Hill Rd., Malone, NY. (*See* TAC ¶ 10.) "For the purposes of venue, state officers 'reside' in the district where they perform their official duties." *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 237 (W.D.N.Y. 2010) (citation omitted); *see also Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006) (same). Plaintiff thus acknowledges that all Defendants implicated in the second cause of action are residents of the Northern (rather than the Southern) District of New York.

Plaintiff nevertheless argues that venue is still proper under 28 U.S.C. § 1391(b)(1)

because some Defendants in this case, namely those implicated in the first cause of action (i.e., Defendants Perez, Byrd, Rodriguez and Brown), reside in the Southern District of New York. As noted, however, "venue is reviewed claim by claim." *Basile*, 717 F. Supp. 2d at 387. Thus, the residency of Defendants in the first cause of action should not be used to extend jurisdiction over the second cause of action unless "factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation[,] and fairness to the litigants" so suggest. *NextEngine Inc. v. NextEngine, Inc.*, No. 17-CV-9785, 2019 WL 79019, at *2 (S.D.N.Y. Jan. 2, 2019) (citation and quotations marks omitted). Here, Plaintiff does not, and indeed cannot, argue that such factors apply. Moreover, the Court has already dismissed these Defendants from this Action due to Plaintiff's failure to exhaust. In light of that dismissal, the Southern District of New York is no longer "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1).

Plaintiff also seeks to defeat the venue challenge by invoking § 1391(b)(2). In particular, Plaintiff argues that the Southern District of New York is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," because the May 22, 2016 assault against him took place in Sing Sing. (Pl's Mem. 4 (quoting § 1391(b)(2).) Plaintiff further argues that the May 22, 2016 assault is a "substantial part of the entire claim" and "inextricably cohesive to the events occurring at Upstate." (*Id.*)

Plaintiff's argument is precluded by the governing caselaw. Again, the Court reviews venue "claim by claim." *Basile*, 717 F. Supp. 2d at 387. Thus, while Plaintiff is correct that the May 22, 2016 assault occurred in the Southern District of New York, the relevant events for the purpose of this Motion are those that underlie the second cause of action. *See Fedele*, 18 F. Supp. 3d at 317 ("Only the events that directly give rise to a claim are relevant." (citation and

quotation marks omitted)).  Here, Plaintiff acknowledges that all such actions occurred in the Northern District of New York:  Travis's alleged denial of medical treatment, Manson's and Vesneske's alleged refusal to call for medical care, and Vesneske's alleged threat all occurred in Upstate.  (*See* TAC ¶¶ 37–57.)

Plaintiff nevertheless urges the Court to consider the May 22, 2016 assault sufficiently related to the second cause of action because the conduct at issue was, allegedly, retaliation for Plaintiff's conduct during that earlier assault.  (Pl.'s Mem. 4.)  This, however, is insufficient.  Plaintiff's allegations merely suggest that the May 22, 2016 assault provided the *motive* for the conduct alleged in the second cause of action; that assault does not, however, "give rise" to Plaintiff's claim.  *Fedele*, 18 F. Supp. 3d at 317.  Indeed, in *Melendez v. Wilson*, No. 04-CV-73, 2006 WL 2621083 (S.D.N.Y. Sept. 12, 2006), the court rejected precisely the same argument that Plaintiff now advances.  *Id.* at *10.  There, a plaintiff alleged multiple assaults at both Sing Sing and Upstate and argued that the Upstate incidents were expressly retaliatory "in light of the fact that [the plaintiff] had punched an officer at Sing Sing."  *Id.* at *7.  Nevertheless, the court severed and transferred all claims arising out of incidents that occurred in Upstate to the Northern District of New York.  *Id.* at *10.  The same logic applies here.

"Where venue is not proper, a district court has discretion to 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'"  *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 172 (S.D.N.Y. 2009) (quoting 28 U.S.C. § 1406(a)); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." (citations omitted)).  "Dismissal is a severe penalty that will not ordinarily be imposed where . . . the statute of limitations has run and plaintiff's claim will be essentially extinguished."

*Yanouskiy v. Eldorado Logistics Sys., Inc*., No. 05-CV-2202, 2006 WL 3050871, at *7 (E.D.N.Y. Oct. 20, 2006) (citation omitted); *see also Daniel*, 428 F.3d at 435 ("A compelling reason for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." (citation and quotation marks omitted)). Nevertheless, dismissal is appropriate when "the case unquestionably lacks merit," *Yanouskiy*, 2006 WL 3050871, at *7 (citing *Daniel*, 428 F.3d at 436), "was brought with knowledge that venue was improper, or would otherwise 'reward plaintiffs for their lack of diligence in choosing a proper forum,'" *id*. (quoting *Spar, Inc. v. Info. Res., Inc*., 956 F.2d 392, 394 (2d Cir.1992)).

Here, if the Court dismisses this Action, the applicable three-year statute of limitations, *see Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (noting that a three-year statute of limitations applies to § 1983 claims filed in New York (citing N.Y. C.P.L.R. § 214(5))), *cert. denied*, 538 U.S. 922 (2003); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (same for actions brought under §1985(3)), may bar re-filing of Plaintiff's second cause of action, *see Pisani v. Diener*, No. 07-CV-5118, 2009 WL 749893, at *9 (E.D.N.Y. Mar. 17, 2009) (explaining that if the case was dismissed for improper venue, the statute of limitations would bar re-filing in the proper venue, even though the action had been timely filed in the improper venue). *But see L.A. Printex Indus., Inc. v. At Last Sportswear, Inc*., No. 08-CV-8981, 2009 WL 1285923, at *2–3 (S.D.N.Y. May 4, 2009) (holding that statute of limitations on an action re-filed in the proper venue could be equitably tolled for the period in which the case was pending in an improper venue (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) ("When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply."))). There is no reason to subject Plaintiff's second cause of action to the possibility of such a result, and so the Court finds that it

is in the interest of justice to transfer, rather than to dismiss, all claims against Defendants Travis, Vesneske, and Manson.

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted with respect to the first cause of action, and Defendants' Motion To Transfer Venue is granted with respect to the second cause of action.

As this is the first adjudication of Plaintiff's claims, all claims against Defendants Perez, Byrd, Rodriguez, and Brown are dismissed without prejudice. If Plaintiff wishes to file a fourth amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion. Plaintiff is advised that the fourth amended complaint will replace, not supplement, all prior complaints. The fourth amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.

Plaintiff's claims against Defendants Travis, Vesneske, and Manson are hereby severed and transferred to the Northern District of New York.

The Clerk is respectfully directed to terminate the pending Motion, (Dkt. No. 79), to transfer those files related to Plaintiff's claims to the Northern District of New York, and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: January 31, 2020
      White Plains, New York

KENNETH M. KARAS
United States District Judge

19